IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DAVID JAMAL WALKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 320-013 |
| | ) | (Formerly CR 317-005) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner, an inmate at the Federal Correctional Institution in Edgefield, South Carolina, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Respondent moves to dismiss the § 2255 motion. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 3), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.   BACKGROUND**

   **A.   Indictment**

On August 2, 2017, the grand jury in the Southern District of Georgia charged Petitioner with one count of possession of firearms and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). United States v. Walker, CR 317-005, doc. no. 1 (S.D. Ga. Aug. 2, 2017) (hereinafter "CR 317-005"). Petitioner faced a statutory sentence of not

more than ten years of imprisonment.  CR 317-005, doc. no. 2.  The Court appointed attorney C. Brian Jarrard to represent Petitioner.  Id., doc. no. 6.

### B. Guilty Plea

On November 9, 2017, Petitioner appeared with counsel and pleaded guilty to the one-count indictment.  Id., doc. nos. 33-35.  The written plea agreement identified the elements of the offense as:  "(1) that Defendant knowingly possessed firearms and ammunition in or affecting commerce; and (2) that, before possessing the firearms and ammunition, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year."  Id., doc. no. 35, ("Plea Agreement"), p. 1.  In exchange for the guilty plea, the government agreed to not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id. at 3-4.

The Plea Agreement contained the following factual basis for Petitioner's guilty plea:

That on or about March 2, 2017, in Johnson County, within the Southern District of Georgia, the defendant, **DAVID JAMAL WALKER**, who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony, did knowingly possess, in and affecting commerce, firearms and ammunition, that is, a Ruger, Model LCP, .380 caliber pistol, a Palmetto State Arms, Model PA 15, 5.56mm caliber rifle, .380 caliber ammunition, and 5.56mm caliber ammunition, which had previously been transported in interstate and foreign commerce; done in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

Id. at 2.  With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 9.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him

2

above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 5. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. at 5-6. By signing the Plea Agreement, Petitioner additionally attested Mr. Jarrard had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 7.

At the change of plea, United States District Judge Dudley H. Bowen, Jr., found Petitioner was competent to enter a guilty plea if he so desired. Id., doc. no. 45, (Rule 11 Tr.), pp. 3-5. Petitioner testified under oath he had sufficient time to discuss his case with Mr. Jarrard and was satisfied with counsel's preparation and handling of the case. Id. at 5. Judge Bowen reviewed the felon in possession of firearms and ammunition charge to which Petitioner was pleading guilty and the maximum prison term of ten years. Id. at 5-6.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the list of rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden of proof, the right to present and cross-examine witnesses, and the right to remain silent. Id. at 6-7. Petitioner confirmed no one had forced, threatened, or pressured him into pleading guilty. Id. at 7. In addition, Judge Bowen reviewed the appeal waiver and its limited exceptions, as well as the collateral attack waiver. Id. at 8. Further, Judge Bowen confirmed that, other than the promises the government made in the Plea Agreement, no one had made him any promises in order to get him to plead guilty; Petitioner affirmed that no

3

one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 9.

Next, Judge Bowen heard a factual basis for the guilty plea from Special Agent Ronald Rhodes with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. SA Rhodes described the March 2, 2017 traffic stop effectuated by the Chief of the Wrightsville Police Department for a window tint violation. Id. at 10. Petitioner was the driver and sole occupant of the vehicle. Id. at 10-11. The Chief noted an odor of marijuana coming from the car, determined Petitioner had a suspended driver's license, and asked Petitioner to exit the vehicle. Id. at 11. Petitioner admitted there was a firearm in the center console and trunk. Id. Officers located the firearms and ammunition underlying the federal charges and determined the rifle recovered from the trunk had been reported stolen less than a month earlier from Lexington County, South Carolina. Id.

Petitioner was arrested, and he admitted his status as a convicted felon. Id. SA Rhodes confirmed Petitioner's March 4, 2009 felony conviction for assault and battery with intent to kill. Id. SA Rhodes further testified the recovered ammunition also traveled in interstate commerce and that the firearms had been administratively forfeited. Id. at 11-12. Petitioner did not have any disagreement with the testimony of SA Rhodes and confirmed he was guilty of, and wanted to plead to, count one of the indictment. Id. at 12-13.

### C. Sentencing

The United States Probation Office then prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at twenty-one, Criminal History Category at IV, and Guidelines imprisonment range at fifty-seven to seventy-one months. PSI ¶¶ 23, 29, 53. The criminal history section listed the prior felony conviction for assault and battery

with intent to kill based on a March 30, 2008 incident in which Petitioner, while threatening the victim, shot a firearm approximately five times into the victim's residence. PSI ¶ 26. The prison sentence for this felony conviction was eighteen months. Id. The base offense level of twenty-two was increased by two points because the federal offense involved a stolen firearm. PSI ¶ 15. The adjusted offense level was reduced three points for Petitioner's acceptance of responsibility. PSI ¶¶ 19, 21-23.

Neither Petitioner nor the government filed objections to the PSI. See PSI Add. Judge Bowen imposed a term of imprisonment of seventy months. CR 317-005, doc. no. 38. Consistent with the Plea Agreement and Post-Conviction Consultation Certification, (CR 317-005, doc. no. 39), Petitioner did not file a direct appeal.

### D.     § 2255 Motion

In Rehaif v. United States, 139 S. Ct. 2191 (U.S. 2019), the Supreme Court held that in a felon in possession prosecution "under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Id. at 2200. Prior to this 2019 decision, the government was not required "to satisfy a mens rea requirement with respect to the status element of § 922." United States v. Rehaif, 888 F.3d 1138, 1144 (11th Cir. 2018), *rev'd and remanded*, 139 S. Ct. 2191. The Eleventh Circuit Court of Appeals has determined the Supreme Court's Rehaif decision clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2) but did not announce a new rule of constitutional law. In re Palacios, 931 F.3d 1314, 1315 (11th Cir. 2019). The Eleventh Circuit also recognized the Supreme Court did not make the case retroactively applicable to cases on collateral appeal. Id.

Petitioner argues he is actually innocent of the crime to which he pleaded guilty because he "did not know his prior criminal history placed him in a category of prohibited person(s)" as set forth in § 922(g). (Doc. no. 1, p. 7.) Had his counsel properly advised him of the mens rea requirement announced in Rehaif, Petitioner would not have pleaded guilty. (Id.) Respondent argues the § 2255 motion should be dismissed because Petitioner cannot establish counsel provided ineffective assistance for not anticipating a change in the law that occurred approximately one and a half years after he pleaded guilty. (Doc. no. 3, pp. 3-6.) Moreover, Petitioner procedurally defaulted any Rehaif claim by not raising it on direct appeal, and in any event, any Rehaif error was harmless. (Id. at 6-9.)

## II.     DISCUSSION

### A.     Ground One Forms No Basis for Relief

Petitioner claims that had Mr. Jarrard informed him of the mens rea element announced in Rehaif, he would not have pleaded guilty because he was unaware he belonged to a category of persons prohibited from possessing a firearm. Where, as here, a petitioner claims his guilty plea was "involuntary" or "unintelligent" because counsel provided erroneous advice, the Court applies the two-part Strickland v. Washington test when analyzing the ineffective assistance claim. See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985).

#### 1.     Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003). Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial.

6

Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). Stated otherwise, "the defendant must show that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

### 2. Petitioner Cannot Satisfy the Two-Part Strickland Test

Petitioner cannot show Mr. Jarrard's failure to advise him of the Rehaif mens rea element fell below an objective standard of reasonableness because at the time of Petitioner's plea in 2017, no such requirement existed. Prior to Rehaif, every federal circuit to address the issue of what the government must prove in a felon in possession prosecution, to include the Eleventh Circuit, ruled § 992(g) did not require proof a defendant knew he was

7

prohibited from possessing a firearm.  Rehaif, 139 S. Ct. at 2201 (Alito, J., dissenting); Rehaif, 888 F.3d at 1144; see also United States v. Palma, 511 F.3d 1311, 1315 (11th Cir. 2008) (*per curiam*) (requiring government show in § 922(g) prosecution a defendant (1) knowingly possessed a firearm or ammunition; (2) was previously convicted of offense punishable by prison term exceeding one year; and (3) firearm or ammunition was in or affecting interstate commerce).  Indeed, Petitioner concedes "the law existing at [the time of his guilty plea] did not require the prosecution to prove (beyond a reasonable doubt) the movant's knowledge of prohibited person status as an essential element of § 922(g)." (Doc. no. 1, p. 9.)

The law is well-settled that counsel does not perform deficiently by failing to anticipate a change in the law.  See Rambaran v. Sec'y, Dep't of Corrs, 821 F.3d 1325, 1332, 1334 (11th Cir. 2016) (collecting cases).  Accordingly, Mr. Jarrard's failure to predict a change in the law nearly one and a half years after Petitioner entered his guilty plea cannot be considered deficient performance.  By the same token, Petitioner cannot establish prejudice.  As discussed in detail below, the record establishes Petitioner knew he had been convicted of a crime punishable by more than one year in prison.  Indeed, Petitioner admitted to the probation officer "that he knew what he was doing was illegal." PSI ¶ 11.  Moreover, by pleading guilty, Petitioner reduced his offense level by three points, which subsequently lowered his advisory Guidelines range of imprisonment, a benefit he would have lost had he gone to trial and risked conviction on a charge to which he offers no defense other than a purely legal argument which was not available at the time he pleaded guilty.  See PSI ¶¶ 11-12, 19, 21-23, 53.

### 3. Petitioner's Guilty Plea Was Knowing and Voluntary

Although Petitioner primarily claims his guilty plea was not knowing and voluntary because of the deficient advice received from Mr. Jarrard - a baseless claim as described above - for the sake of completeness, the Court also analyzes the overarching, knowing and voluntary nature of Petitioner's guilty plea.

#### (a) Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### (b) Judge Bowen's Colloquy with Petitioner Satisfied the Three Core Principles

Judge Bowen informed Petitioner in clear terms of the charge to which he was pleading guilty, and Petitioner testified he understood the charges. Rule 11 Tr. 5-6. Judge Bowen also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 6-7. Petitioner testified that other than the promises the government made in the Plea Agreement, no one made promises to get him to plead guilty, and Judge Bowen confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 7, 9.

Additionally, Judge Bowen informed Petitioner of the possible penalty he faced upon conviction, to include a prison term of not more than ten years. Id. at 6. Finally, Petitioner also testified he had enough time to discuss the case with Mr. Jarrard and was satisfied with his services. Id. at 5; see also Plea Agreement, p. 7 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with

10

the legal advice given and the work performed by his attorney."); Id. at 9 ("I have read and carefully reviewed this agreement with my attorney.").

Petitioner argues his guilty plea was not made knowingly because "he was allowed to plead guilty without being informed of the essential elements" of his crime. (Doc. no. 7, p. 2.) In further support of his argument, Petitioner contends that "even though he admitted to being a convicted felon, he did not know his status at the time of his arrest for this federal offense, because after getting off probation Georgia residents get their rights back to bear arms." (Id. at 3.) Of course, at the time Petitioner entered his guilty plea, the law did not require the government to prove the mens rea element. See Rehaif, 888 F.3d at 1144. Thus, there was no error in failing to inform Petitioner about an element that was not essential to obtaining a conviction at that time. Rather, the Supreme Court clarified almost a year and a half later in its Rehaif decision what the government had to prove in a felon in possession case. Rehaif, 139 S. Ct. at 2200.

Furthermore, Petitioner's "belief" that he was his right to bear arms had been restored because "Georgia residents get their rights back to bear arms" does not carry the day. First, as set forth in the PSI, to which Petitioner did not object, his residence address was Columbia, South Carolina, and Petitioner informed the officer who initiated the traffic stop leading to his arrest that he had a suspended South Carolina license. PSI, Identifying Information & ¶ 4. Second, all of Petitioner's prior criminal history, including his prior felony conviction for assault and battery with intent to kill, occurred in South Carolina, and the PSI did not show Petitioner served any term of probation. PSI ¶¶ 25-28. Moreover, when he was arrested, Petitioner admitted to officers he was a convicted felon out of South

11

Carolina, and Petitioner admitted to the probation officer "he knew what he was doing was illegal." PSI ¶¶ 5, 11.

This belated, conclusory, and self-serving assertion about a belief Petitioner's right to bear arms had been restored flies in the face of the record and contradicts his sworn assertions to Judge Bowen about his status as a convicted felon at the change of plea proceedings. Indeed, Petitioner swore under oath to Judge Bowen that he had no disagreement with the fact he had a prior felony conviction when he possessed firearms and ammunition upon his arrest on March 2, 2017. Rule 11 Tr. 10-12. Petitioner also signed the Plea Agreement recounting his status as a convicted felon. Plea Agreement, pp. 1-2, 9. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

Thus, Judge Bowen's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Petitioner has not shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea. See United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004). Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea to the felon in possession charge.

Finally, although Respondent does not argue the point, failure to include the mens rea element of a § 922(g) felon in possession charge is a non-jurisdictional defect. See United States v. Moore, 954 F.3d 1322, 1334-35 (11th Cir. 2020); United States v. McClellan, 958 F.3d 1110, 1118 (11th Cir. 2020). Entry of a valid guilty plea waives all non-jurisdictional defects that occurred prior to entry of the plea, which includes omission of an element of offense such as the mens rea element of a felon in possession charge. See United States v. Ward, 796 F. App'x 591, 599 (11th Cir. 2019) (*per curiam*); see also United States v. Brown, 752 F.3d 1344, 1354 (11th Cir. 2014) (holding failure to include mens rea element in indictment was non-jurisdictional defect waived by guilty plea); United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### B.   Ground Two Forms No Basis for Relief

Petitioner's claim in Ground Two, a variation on the theme of Ground One, is that the change in the law announced in Rehaif renders his § 922(g) conviction invalid. Petitioner procedurally defaulted this claim, and it fails on the merits because the uncontroverted record establishes Petitioner knew he was a convicted felon when he possessed the firearms and ammunition forming the basis of his § 922(g) conviction.

#### 1.   Petitioner Procedurally Defaulted His Rehaif Claim by Failing to Assert It on Direct Appeal

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills

13

v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that

14

they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170. As to the exception for actual innocence, the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013) (emphasis added). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623-24 (citation omitted).

Petitioner alleges the indictment was inadequate because it failed to include the mens rea element of the offense, and he did not know his status as a felon barred him from possessing firearms at the time of his arrest. (Doc. no. 1, p. 7; doc. no. 7, pp. 2, 3.) However, Petitioner did not raise his mens rea claim before Judge Bowen or on direct appeal. Petitioner points out as justification for this failure that the claim was foreclosed by court precedent before the Supreme Court's Rehaif decision. (Doc. no. 1, p. 9.) However, as explained above, that a claim was previously unacceptable to a court does not satisfy the cause requirement. Id. at 623. Moreover, the building blocks for the claim were available. Bane, 948 F.3d at 1297. As the Eleventh Circuit has explained, the Supreme Court's Rehaif decision did not announce a new rule of constitutional law but instead clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2). See In re Palacios, 931 F.3d at 1315.

Petitioner points to nothing that prevented him from raising what may have seemed at the time to be a losing argument. After all, as a sister circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the

15

first place." Prost v. Anderson, 636 F.3d 578, 592 n.11 (10th Cir. 2011) (Gorsuch, J.). Indeed, successfully challenging circuit precedent all the way to the Supreme Court is the reward to litigants who "took the trouble to challenge adverse circuit precedent." Id. at 590-91.[1] In any event, Petitioner affirmatively recorded his wishes that Mr. Jarrard not file an appeal. CR 317-005, doc. no. 39. As Petitioner cannot satisfy the cause *and* prejudice standard, his procedural default is not excused. See Mills, 36 F.3d at 1055.

Nor can Petitioner satisfy the rigorous fundamental miscarriage of justice exception. He presents no evidence, much less new evidence, to suggest no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt had he gone to trial and required the government to prove the mens rea element. See McQuiggin, 569 U.S. at 386. This is particularly true in light of Petitioner's criminal history, which resulted in Petitioner serving eighteen months in prison. Indeed, Petitioner swore under oath to Judge Bowen that he had no disagreement with the fact he had a prior felony conviction when he possessed

---

[1] For the sake of completeness, the Court notes a collateral attack waiver cannot serve as cause to excuse procedural default. See Lester v. United States, No. 3:17-CR-76-J-32JBT, 3:18-cv-1076-J-32JBT, 2020 WL 1911462, at *4 (M.D. Fla. Apr. 20, 2020), *appeal filed*, No. 20-12694 (11th Cir. July 20, 2020). It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary. United States v. DiFalco, 837 F.3d 1207, 1219-20 (11th Cir. 2016). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001). If the government meets this burden, then the waiver is valid and enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver). As set forth above, the Plea Agreement signed and verified by Petitioner explicitly stated he was voluntarily waiving his right to a direct appeal, absent three exceptions that do not apply in this case. Plea Agreement, p. 5. Moreover, Judge Bowen reviewed the appeal waiver provision in the Plea Agreement during the change of plea proceedings and confirmed Petitioner's understanding and agreement to the same. Rule 11 Tr. 8. Thus, the waiver is valid.

firearms and ammunition upon his arrest on March 2, 2017. Rule 11 Tr. 10-12. Petitioner also signed the Plea Agreement recounting his status as a convicted felon, (Plea Agreement, pp. 1-2, 9), and the PSI, to which Petitioner did not object, recounted he twice admitted to his status as a convicted felon, (PSI ¶¶ 5, 11). "It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).

Petitioner never objected or otherwise expressed any surprise or confusion over his status as a felon. "Where the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a Rehaif error does not affect his substantial rights." McClellan, 958 F.3d at 1119 (citing United States v. Reed, 941 F.3d 1018, 1022 (11th Cir. 2019)); see also United States v. Ward, 796 F. App'x 591, 600-01 (11th Cir. 2019) (*per curiam*) (finding prior criminal history can show defendant's knowledge of status as belonging to group prohibited from possessing a firearm). Stated otherwise, a bare Rehaif claim, made in the face of an established criminal history showing a petitioner belongs to the group prohibited from possessing a firearm, does not support an actual innocence claim. See In re Wright, 942 F.3d 1063, 1065 (11th Cir. 2019); Reed, 941 F.3d at 1021-22.

In sum, Petitioner procedurally defaulted his Rehaif claim. See United States v. Sanders, No. 4:14CR81-RH-CAS, 2020 WL 1876335, at *2 (N.D. Fla. Apr. 15, 2020) (rejecting § 2255 Rehaif claim as procedurally defaulted when not raised at trial or on direct appeal and petitioner failed to satisfy cause and prejudice or actual innocence exception).

### 2.     Even if the Rehaif Claim Were Not Defaulted, Petitioner Is Not Entitled to Relief on the Merits Because Omission of the Mens Rea Element Was Harmless Error

Even if Petitioner's Rehaif claim were not procedurally defaulted, he is not entitled to relief because the Rehaif error was harmless. It is long-settled that to obtain collateral relief, Petitioner must identify "a fundamental defect which inherently results in a complete miscarriage of justice, [or is] an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962). On collateral review, relief cannot be granted unless there is "grave doubt" that the error "had substantial and injurious effect or influence" on the outcome of the underlying proceedings. Al-Amin v. Warden Ga. Dep't of Corr., 932 F.3d 1291, 1298 (11th Cir. 2019) (citations omitted), *cert. denied sub nom.* Al-Amin v. Ward, -S. Ct. -, No. 19-573, 2020 WL 1668291 (U.S. Apr. 6, 2020). The Eleventh Circuit has explained that when applying the appropriate harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), "[i]f, when all is said and done, the [court's] conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand." Ross v. United States, 289 F.3d 677, 683 (11th Cir. 2002) (citations omitted).

Petitioner cannot shoulder his heavy burden because the uncontroverted record establishes Petitioner knew he was a felon when he possessed the firearms and ammunition forming the basis of his § 922(g) conviction. As discussed in Part II(B)(1), *supra*, Petitioner had a prior felony conviction for which he served eighteen months in prison. PSI ¶ 26. The PSI recounted Petitioner's two admissions, one made in a bid for a reduction in his sentence for acceptance of responsibility, that he was a convicted felon and knew what he was doing was illegal. PSI ¶¶ 5, 11. Petitioner did not object to any of the information in the PSI, nor

did he object at any time when he signed the Plea Agreement designating him a convicted felon, Judge Bowen reviewed the charges at the change of plea hearing, or SA Rhodes testified about Petitioner's prior criminal history.

That Petitioner had served eighteen months in prison on a prior felony conviction and repeatedly admitted his status as a convicted felon, without ever challenging the designation, shows he knew his status as a felon prior to his federal offense date. See Reed, 941 F.3d at 1022 (citing eight prior felonies, stipulation to felony conviction prior to offense date, and trial testimony to show knowledge of status as felon); United States v. Caldwell, 805 F. App'x 743, 749 (11th Cir. 2020) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal where defendant responded affirmatively to district court questions if he knew what a felony was and if he had previously pled guilty to a felony); United States v. Green, 798 F. App'x 527, 533 (11th Cir. 2020) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal after concluding prior conviction of multiple felonies and serving three-year prison sentence shows knowledge of status as a felon); United States v. Gilcrest, 792 F. App'x 734, 736 (11th Cir. 2019) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal where defendant had served more than one year in prison multiple times, had a prior felon-in-possession conviction, did not object to portions of PSI recounting prior felony history, and stipulated at trial to being felon at time of offense).

In sum, pursuant to a harmless error analysis, Petitioner has not shown the Rehaif error was "a fundamental defect which inherently result[ed] in a complete miscarriage of justice," and he is not entitled to relief. See Brecht, 507 U.S. at 634 & n.8.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 3), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 14th day of August, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA